HINCH *v.* HINCH.

4-8855                                                     220 S. W. 2d 123

Opinion delivered May 9, 1949.

*Hibbler & Hibbler,* for appellant.

FRANK G. SMITH, J. Appellee sued appellant, her husband, for a divorce and as grounds for that relief alleged that he had, by his course of conduct long pursued, rendered her condition as his wife intolerable. A decree was rendered upon the grounds alleged, from which is this appeal.

The parties were married June 22, 1920, and for a number of years lived together without unusual discord. They have occupied since their marriage a home owned by appellee. The inception of the discord was the appellant's practice of frequently absenting himself from the home, spending the night away from there, and when appellee would inquire about his absence he would tell her that it was none of her business.

At the time of the trial, from which is this appeal, appellant was between 57 and 60 years old, and appellee admitted that she was 87. Both admitted that they had

ceased to live together harmoniously and appellant attributed this fact to the interference of appellee's daughters, both being about as old as appellant. In addition to her home, the parties owned two other lots, one as tenants by the entirety and the other was owned by appellant individually. The disposition of this property made in the decree is not questioned.

Appellant brought his father, who was an old man of the same age as appellee, to the home, and he resided there for twelve years or more. His presence became objectionable to appellee, as she and her father-in-law did not get along well together, and on one occasion he snatched the dish rag out of her hand while she was engaged in the kitchen. Appellee complained of this and of other officiousness of her father-in-law, but appellant told her that his father was an old man and she would have to endure his conduct as he came first with him. On the other hand, appellant objected to the visits of his wife's two daughters, and one of them ceased to visit her at her home because of appellant's conduct. The other daughter testified that she continued to visit her mother notwithstanding appellant's conduct. This daughter had married and moved to Columbus, Ohio, but had returned home at her mother's request. Appellee gave this daughter a deed to the home, which was duly delivered. Evidently this deed was intended to operate in the nature of and as a substitute for a will, as possession of the deeded property was not taken. The daughter testified that it was her intention to take care of her mother, and that she was there for that purpose.

Relations between appellant and appellee became more strained after he learned of this deed and he continually fussed with and quarreled at appellee, who was in feeble health and who, after the most severe of these quarrels, would have nervous spells which would confine her to her bed, and the testimony of relatives, including a nephew, was to the effect that appellant was indifferent to his wife when she was ill and unsympathetic with her.

Appellee was a fortune teller, and called herself a consultant, from which employment she earned money,

which she contributed in part to the support of the household, and acquired the town lots above referred to.

The discord culminated when someone took from appellee $1,400 in cash which she had concealed in her room. She called officers of the law, who made investigation, and although she suspected appellant of having taken her money, she refused to have him arrested, saying to the officers that she and her husband would talk the matter over. She testified that she and appellant did talk the matter over and that he returned $300 of the money and promised to repay the balance in monthly installments, but that after making a few payments as agreed, appellant refused to continue the payments. All of this appellant denied.

The money was never recovered except the payments made as above stated. At any rate, the relations of the parties became more strained and according to appellee, appellant became more acrimonious in his dealings with her, and her testimony, corroborated by members of her family, was to the effect that after these quarrels appellee would have nervous spells which confined her to her bed.

All of this appellant denied, his testimony being to the effect that he was not only considerate, but was an indulgent husband, and that he contributed his earnings to the upkeep of his household and that his quarrels with his wife were precipitated by the interference of her children and members of her family, and that he and his wife got along harmoniously when they were not around.

There are conflicts in the testimony in regard to matters stated which cannot be reconciled, but the recitals of the decree indicate the finding that appellee's version of their relationship was accepted as true, and that because of appellant's conduct appellee's condition as appellant's wife had become intolerable.

Appellee's right to the divorce is the only question raised in appellant's brief, and we think the preponderance of the testimony supports the findings of the decree which is accordingly affirmed.